UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSHAUN LYNN ROBINSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:19-cv-01318-JMS-MJD |
| S. AYORINDE, et al. | ) |
| Defendants. | ) |

**ENTRY GRANTING UNOPPOSED MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

The plaintiff, Marshaun Robinson, asked to attend a religious service at the Correctional Industrial Facility on February 1, 2019. The defendants, Sergeant Ayorinde and Lieutenant Durr, denied his request. Mr. Robinson alleges that the defendants violated his First Amendment right to freely exercise his religious beliefs, and he seeks damages under 42 U.S.C. § 1983.

The defendants have moved for summary judgment. Dkt. 70. Mr. Robinson has not responded, and his deadline has passed. Because the record shows that the defendants did not violate Mr. Robinson's First Amendment rights—or at least that they did not violate clearly established law—their motion for summary judgment, dkt. [70], is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can

also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)

Mr. Robinson failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). "Even where a non-movant fails to respond to a motion for summary judgment,

the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, ___ F.4th ___, 2021 WL 2350875, at *2 (7th Cir. June 9, 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)). Thus, the plaintiff's failure to respond does not alter the summary judgment standard, but it does "reduce the pool" from which facts and inferences may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997) (cleaned up).

## II. Facts

In February 2019, Mr. Robinson was enrolled in the PLUS Program at the Correctional Industrial Facility ("CIF"). Dkt. 19 at 3.[1] On Friday mornings, he had conflicting engagements. The PLUS Program required Mr. Robinson to attend a Victim Impact class, but the class overlapped with a Messianic Jewish worship service. *Id.* Most Fridays, Mr. Robinson went to class, left for the chapel after class ended, and participated in the remainder of his worship service. *Id.*

In 2019, CIF maintained an "Offender Movement" directive to "establish systematic movement of the offenders in the facility." Dkt. 70-1 at 1. The directive established a schedule by which inmates would gather and then leave for various movements throughout the prison. *Id.* For example, inmates with "movement letters" would leave on the hour; inmates eligible for recreation would leave at five minutes before the hour; and inmates with work assignments would leave at half past the hour. *Id.*

The sergeant or designated officer called each group to gather ten minutes before its scheduled time. *Id.*; dkt. 70-3 at ¶ 4. Once the group left at its scheduled time, the opportunity to leave for that purpose closed. Dkt. 70-1 at 1.

---

[1] "For purposes of summary judgment, [Mr. Robinson]'s verified complaint functions as an affidavit." *Balsewicz v. Pawlyk*, 963 F.3d 650, 656 n.3 (7th Cir. 2020).

Inmates participating in religious services required movement letters. *Id.*; dkt. 70-3 at ¶ 4. The sergeant therefore called them to gather ten minutes before the hour. Dkt. 70-1 at 1; dkt. 70-3 at ¶ 4. They left on the hour, and then movement closed for inmates with movement letters for another 50 minutes. Dkt. 70-1 at 1; dkt. 70-3 at ¶ 4.

On February 1, 2019, Mr. Robinson finished his PLUS class like usual, then asked Sergeant Ayorinde to go the chapel for the Messianic Jewish worship service. Dkt. 19 at 3. However, he did so after movement had closed for inmates with movement letters. Dkt. 70-3 at ¶ 4. Sergeant Ayorinde told Mr. Robinson he could not go to the chapel because movement had closed. *Id.*

Mr. Robinson reiterated his request to go to the chapel, and Sergeant Ayorinde relayed the situation to Lieutenant Durr. *Id.* at ¶ 5. Lieutenant Durr affirmed Sergeant Ayorinde's decision that Mr. Robinson could not leave for the chapel because movement had closed. *Id.* Mr. Robinson asked the defendants to call the chaplain to verify that he joined the Messianic Jewish service late every Friday, but they refused. Dkt. 19 at 3. Mr. Robinson could not participate in the worship service that Friday. *Id.*

### III. Analysis

At screening, the Court found plausible allegations that the defendants violated Mr. Robinson's First Amendment right to freely exercise his religious beliefs. When tested against the evidence now in the record, however, those claims are no longer viable. The defendants are entitled to summary judgment, either on the merits of the First Amendment or under the doctrine of qualified immunity.

4

**A.     First Amendment**

"Prison officials may not substantially interfere with an inmate's ability to practice his religion unless the restriction reasonably relates to a legitimate penological interest." *Larry v. Goldsmith*, 799 F. App'x 413, 415 (7th Cir. 2020) (citing *Turner v. Safley*, 482 U.S. 78, 87 (1987)). "Legitimate penological interests include security and economic concerns." *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

"Courts consider four factors when evaluating a prison policy against a First Amendment claim." *Larry*, 799 F. App'x at 415. They are:

(1) whether the policy rationally relates to a legitimate government objective;

(2) whether the inmate has an alternative means of exercising the right;

(3) the impact that accommodating the right will have on security; and

(4) whether ready alternatives exist to the prison's policy.

*Id.* (citing *Tarpley v. Allen Cty.*, 312 F.3d 895, 898 (7th Cir. 2002)).

Mr. Robinson wished to practice his religion by leaving his unit to attend a worship service. More specifically, he wished to leave after other attendees had already left the unit and the service had already begun. That desire ran up against the controlled movement directive, which required inmates permitted to leave based on movement letters to gather at ten minutes before the hour and leave on the hour.

The controlled movement directive's stated purpose is to "establish systematic movement of the offenders in the facility." Dkt. 70-1 at 1. This purpose is clearly and rationally related to the prison administration's legitimate interest in maintaining order and security. *See Ortiz*, 561 F.3d at 669. Inmates leave their units for a variety of reasons and destinations throughout the day: recreation, work, medication, visitation, insulin, legal mail, and religious services. *See* dkt. 70-1 at 1. When the staff completes the process of moving one group, it begins the process of moving

5

the next group. The cycle repeats every hour. It is easy to understand why officers in the defendants' position require inmates to report for movement at their designated times and refuse requests to move afterward.

The record thus favors the defendants on the first and third factors. Prison officials enforce the controlled movement directive to maintain order and security, and they could reasonably expect that allowing inmates to deviate from that protocol would disrupt movement by other inmate groups and affect security.

Meanwhile, Mr. Robinson offers no evidence to tip the remaining two factors in his favor. He does not suggest a ready alternative that would allow prison staff to maintain secure and orderly inmate movement but also accommodate individual inmates who wish to leave outside designated times. Mr. Robinson also fails to establish that there was no alternative to the course he pursued on February 1. He opted to attend his 8:00 PLUS class, then seek permission to leave for worship service after movement had closed. Could he have attended his PLUS class at a different time? Did the prison offer a Messianic Jewish service on a different day or at a different time? After missing the service, did he have access to a different spiritual practice that would have satisfied his needs? Perhaps the answer to all these questions is "no." But a summary judgment motion requires litigants to support their cases with evidence, *see Gekas*, 814 F.3d at 896, and Mr. Robinson has not done so.

In sum, all available evidence indicates that the defendants' conduct on February 1 reasonably related to a legitimate penological interest. *See Larry*, 799 F. App'x at 415. On this record, no reasonable jury could return a verdict for Mr. Robinson.

6

### B. Qualified Immunity

If the undisputed facts did not warrant summary judgment on the merits, they would at least entitle the defendants to the protections of qualified immunity. "Qualified immunity involves a two-pronged inquiry: (1) whether the facts, read in favor of the non-moving party, amount to a constitutional violation; and (2) whether the constitutional right was clearly established at the time of the alleged violation." *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). The Court has determined that the facts in this case do not show a constitutional violation. And, even if they did, the record does not show that the defendants violated a clearly established right.

A right is clearly established for purposes of qualified immunity if "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). Moreover, that rule must "clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* "'[E]xisting precedent must have placed the statutory or constitutional question beyond debate.'" *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th Cir. 2021). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Although qualified immunity is an affirmative defense, . . . the plaintiff bears the burden of showing that the constitutional right allegedly violated was clearly established at the time of the challenged conduct." *Purvis v. Oest*, 614 F.3d 713, 715 (7th Cir. 2010).

In failing to respond to the summary judgment motion, Mr. Robinson has also failed to carry his burden of showing that the defendants' conduct violated a clearly established right. Mr. Robinson accuses the defendants of interfering with his religious practices by denying his request to leave the unit for a religious service on one occasion after he had missed the designated

7

departure time. But he has not offered a precedent identifying this conduct as indisputably unconstitutional. In fact, several Seventh Circuit precedents would have suggested to the defendants that enforcing the controlled movement directive was constitutionally permissible. Prison officials do not necessarily violate the First Amendment by canceling or delaying group religious services or activities under certain circumstances, such as when staff members, facilities, or qualified religious leaders are not available.[2] Moreover, the Seventh Circuit recently held that prison staff did not violate clearly established law by disciplining Muslim inmates for leaving their bunks to pray during designated "quiet hours." *See Larry*, 799 F. App'x 413.

At minimum, this landscape would have justified the defendants in believing that the First Amendment allowed them to enforce the controlled movement directive despite Mr. Robinson's request to leave late for his worship service. Even if a jury could reasonably resolve the merits of the First Amendment claim in Mr. Robinson's favor, qualified immunity would still preclude any liability for the defendants.

## IV. Conclusion

The defendants' motion for summary judgment, dkt. [70], is **granted**. The action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment** consistent with this order and the screening entries at dkts. 9 and 20.

Date: 8/2/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[2] *See, e.g.*, *Kemp v. Liebel*, 877 F.3d 346 (7th Cir. 2017) (No Jewish services allowed for several months when qualified leaders were unavailable.); *Hambright v. Kemper*, 705 F. App'x 461 (7th Cir. 2017) (Eid al-Fitr feast rescheduled based on staff and chapel availability.); *Hall v. Sutton*, 581 F. App'x 580 (7th Cir. 2014) (Eid-ul-Fitr celebration delayed due to staff availability.).

Distribution:

MARSHAUN LYNN ROBINSON
360 Ardmoor Dr.
Whiteland, IN 46184

Zachary Robert Griffin
INDIANA ATTORNEY GENERAL
zachary.griffin@atg.in.gov